UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EVERETT HADIX, *et al.*,

        Plaintiffs,

v.

PATRICIA L. CARUSO, *et al.*,

        Defendants.
_____/

Case No. 4:92-CV-110

Hon. Richard Alan Enslen

**<u>ORDER</u>**

    Defendants have moved for relief from judgment and/or reconsideration of the Court's grant of an October 19, 2005 Opinion and Preliminary Injunction.[1]  Oral argument is unnecessary.

    Under local rule, reconsideration is warranted only if the movant "demonstrate[s] a palpable defect by which the Court and the parties have been mislead . . . [and] that a different disposition must result from the correction thereof." W.D. Mich. L.Civ.R. 7.4(a). Defendants' Motion fails this standard and those applicable under Federal Rules of Civil Procedure 59 and 60.

    Most of the briefing focuses on one problem case noted by Dr. Cohen (the independent medical monitor). The case was serious and provided a sentinel instance of extremely reckless medical care contributing to the premature death of a patient (A.R.) experiencing a complex medical problem (adult onset diabetic with regular hypoglycemia and hyperglycemia). However, there were many other sentinel cases noted in the Court's Opinion, Dr. Cohen's Third Report and Dr. Walden's analysis of sixteen recent death cases. Those cases, independent from A.R.'s case, document regular, systematic and serious deficiencies in the health care system for prisoners at the *Hadix* facilities. Those deficiencies were known by Defendants and were not corrected despite repeated requests by this Court.

---

[1] The Preliminary Injunction was later amended on November 23, 2005 *nunc pro tunc*.

Regarding A.R.'s case, both Defendants and Plaintiffs' medical experts agree that Dr. Mial, without examining A.R., made an overly aggressive increase of both A.R.'s a.m. and p.m. insulin dosages on July 1, 2005. (Hutchinson Aff. ¶ 7; Walden Aff. ¶ 12.) The type of insulin administered (Humulin 70/30) is a combination of short and long acting insulins. (*Id.*) The peak efficiency of the p.m. dosage of that insulin (4-8 hours after injection) would have coincided with A.R.'s sleeping hours (*i.e.,* when he was not conscious to treat his own hypoglycemia and prevent it from becoming severe). (*See* Pls.' Ex. D, table 51-1.) Insulin, though necessary for bodily function and to prevent hyperglycemia, is dangerous since extreme hypoglycemia may cause death. (Pls.' Ex. 2, 2; *Physician Desk Reference*, 1854 (Thompson 2003 ed.)) For this reason, blood glucose levels must be regularly monitored. A.R.'s blood glucose level was monitored only twice on the day death of his death and was not monitored after an evening reading of 119 mg/dl (which was lower than his ususal evening reading). (Walden Aff. ¶ 22.) This was so despite the fact that medical care workers knew that A.R. had a history of many episodes of hypoglycemia in the recent past and had denied A.R.'s request for a glucometer (to self-monitor blood glucose levels). (*Id.*) On July 15, 2005, at 6:00 a.m., A.R. was treated at the Duane Waters Emergency Room for severe hypoglycemia; his a.m. and p.m. insulin was then reduced somewhat (25 units a.m. and 15 units p.m.[2]). (Hutchinson Aff. ¶ 11.) He was not hospitalized other than emergency room care during that incident.

A.R. suffered another extreme hypoglycemic reaction at 1:45 a.m. on August 9, 2005 and died. (*Id.* ¶ 13.) The medical examiner attributed his death to diabetes and its complications. His blood glucose at the time of death was 25 mg/dl. Normal blood glucose is between 72-144 mg/dl. (Pls.' Ex. D, 434.) Formal nursing protocols require treatment of hypoglycemia at 70 mg/dl regardless of the presence of other symptoms of hypoglycemia. (Pls.' Ex.C, 1.) When a patient loses consciousness due to severe hypoglycemia, the recognized effective treatments are intravenous glucose or dextrose, or, if glucose or

---

[2]A unit is one/one-hundred of a cubic centimeter. The reduced dosages were still higher than the dosages A.R. received prior to Dr. Mial's July 1, 2005 increases. The original increases by Dr. Mial were from 20 to 30 units in the a.m. and 10 to 20 units in the p.m.

dextrose are unavailable, an injection of glucagon.[3] (Pls.' Ex. D, 436.)  While intravenous glucose was administered by emergency workers at 2:10 a.m. (with some delay attributable to difficulty establishing an I.V.), no prior injection of glucagon was given.[4] (*See* id.)

Apart from gross failures in both the over-prescription of insulin and the emergency response, this case illustrates several other systemic failures of the medical care system to treat this case effectively which were in the contemplation of M.D.O.C. medical care workers at the time: (1) a failure to hospitalize or closely treat A.R. after many episodes of hypoglycemia (Walden Aff. ¶ 22); (2) a failure to closely monitor his blood sugars after controversial changes in insulin dosage (*Id*. ¶ 8); and (3) a failure to refer the patient for endocrinologist care  (*Id*. ¶¶ 6, 24-25.)  It is true, as noted by Dr. Hutchinson, that patients such as A.R., with a history of insulin dependent Type II diabetes and serious neuropathy, have high rates of mortality. (Hutchinson Aff. ¶ 4.)  However, the overall care delivered in this case was reckless and most likely contributed to a premature death.

**THEREFORE, IT IS HEREBY ORDERED** that Defendants' Motion for Relief from Judgment and/or Reconsideration (Dkt. No. 1922) is **DENIED**.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>  December 16, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[3] As recognized by Dr. Hutchinson, glucagon is not intended for primary treatment because, if the liver has exhausted supplies of glycogen, it will not be effective. (*See* Hutchinson Aff. ¶ 16; Pls' Ex. D, 436.)  However, it had previously been used for A.R., effectively, to treat prior incidents of hypoglycemia. (Walden Aff. ¶ 18.)

[4] Glucogon was not available to E.M.T. staff, who did not carry it, but was available to nursing and physician staff.