UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EVERETT HADIX, *et al.*,

      Plaintiffs,

v.

PATRICIA CARUSO, *et al.*,

      Defendants.

_____/

Case No. 4:92-CV-110

Hon. Richard Alan Enslen

**OPINION**

      This matter is before this Court to approve one of two fire safety plans and to consider Plaintiffs' Motion to Strike Affidavits attached to Defendants' Detailed Alternative Plan ("D.A.P."). Defendants' D.A.P. is offered in *lieu* of a Compartmentalization Plan mandated by the Injunction Concerning Fire Safety entered on September 14, 2005. Defendants filed a compliant plan on or about January 25, 2006, but urge the Court to approve the D.A.P. filed on March 23, 2006 and further certify to the Sixth Circuit Court of Appeals under *First National Bank of Salem, Ohio v. Hirsch*, 535 F.2d 343, 346 (6th Cir. 1976) that Defendants' appeal of the Injunction be remanded for the purpose of entering Federal Rule of Civil Procedure 60(b) relief (modification of the Injunction to permit approval of the D.A.P.). Hearing was held on the competing plans on February 21, 2006 and post-hearing briefing was ordered and timely filed.

      Defendants' D.A.P. proceeds from the premise that the additional fire safety mandated by the Eighth Amendment may be achieved by Defendants through a less costly and less intrusive plan than was previously ordered. (Reply 2.) Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), injunctive relief as to prison conditions must be "narrowly drawn, extend no further than

necessary to correct the violation . . ., and . . . [must be] the least intrusive means to correct the violation . . . ." 18 U.S.C. § 3626(a)(1).

Defendants' D.A.P. recognizes that the most significant defect of the existing structures, in terms of fire safety, is that disabled inmates are located far from fire exits and cannot reliably exit from fire in a timely way so as to pose a grave danger of smoke inhalation. (*See* Reply 2.) Defendants' D.A.P. solves this problem in a variety of ways. First, it substitutes two-refitted temporary-style structures as to which there are no existing fire safety concerns (Blocks A and B) for Parnall Block 8. (D.A.P. 3.) As to Egeler Blocks 1-3 and 7, Defendants achieve the necessary reduction in travel exit distances by the creation of multiple new exits for each level of prisoner occupancy–two new central staircase exit towers will be added to greatly reduce exit travel distance. (*Id.* at 3-4 & Attach. 1.) For Blocks 1-3 of Egeler, the new staircases are to be accessed in part by raised exit corridors. (*Id.*) Block 7 of Egeler does not use the raised exit corridors because the prisoner cells are along the outside prison walls such that the new exits do not require the use of an additional exit corridor apart from new and short exit ways through the existing cell space into the new stairwell compartments. (*Id.*)

Defendants' D.A.P. does not implement as much additional smoke exhaustion (computed by cubic feet per meter ("CFM") capability of the exhaust fans) as contemplated by the Compartmentalization Plan. The D.A.P. increases the fan CFM for Egeler Block 1 from 20,520 to 32,520. (*Id.* at 4.) The D.A.P. increases the fan CFM capacity for Egeler Block 2 from 18,900 to 29,659. (*Id.* at 5.) The D.A.P. increases the fan CFM capacity for Egeler Block 3 from 20,520 to 30,000. (*Id.*) It also increases the fan CFM capacity for Egeler Block 7 from 14,040 to 19,464. The Compartmentalization Plan included fan CFM capacity of 212,000 for each cell half-block. (Jan.

25, 2006 Plan 5.)  The reason for the significant increase of fan capacity for the Compartmentalization Plan is because such plan halved the available overhead space for smoke collection (*i.e.,* halved the overhead atria) and would have in fact created a greater risk of smoke inhalation were it not for the increased fan capacity.  Since compartmentalization will not occur, the full-scale exhaust system previously contemplated may be less necessary in that the large atrium will continue to provide significant overhead air displacement of smoke.  Since prisoners will be exiting the facilities faster (due to the shortened exit routes), the level of ventilation contemplated by the D.A.P. will be more adequate and would be less likely to pose any undue risk of smoke inhalation injury to prisoners.  The danger of smoke inhalation is also addressed by existing cell sprinklers, property limitations, and nonflammable cell construction which limit both the spread of fire and smoke during arson incidents.

Defendants' D.A.P. does not foresee the use of a new remote unlocking system, but instead calls for the use of continued regular maintenance and repair of the existing unlocking system for the cell blocks.  Defendants have developed a new system for lock inspection intended to assure the functionality of the unlocking mechanisms in the event of fire.[1]  (*Id.* at 13 & Attach. 3.)  Defendants have estimated that the D.A.P. can be implemented at a small fraction ($7.54 million) of the cost of the Compartmentalization Plan ($98.55 million).  (*Id.* Attach. 9.)  Further, the use of the Compartmentalization Plan would require substantial permanent additional correctional officer staffing costs and additional costs for use and maintenance of the electronic remote unlocking system, and other features.  (*Id.*)  For example, for the year 2015, Defendants project that operational

---

[1]Of course, the sufficiency of this new inspection system will be tested further during this litigation.  If prisoners are locked in their cells during fire drills or fires, the system will be subject to further correction or remedy.

and maintenance costs for the Compartmentalization Plan would exceed the costs of the D.A.P. by over $5 million. (*Id.*)

Defendants have also scheduled to complete the D.A.P. at a much faster pace than the Compartmentalization Plan due to the reduction of associated construction tasks. (*Cf.* D.A.P., Attach. 8 (2.5 years) vs. Jan. 25, 2006 Plan, Const. Schedules (5 years).) Defendants have also pledged to implement the D.A.P. without challenge–though of course any plan will be subject to further inmate challenge and testing.

Defendants' D.A.P. was not proposed as of the time of the last evidentiary hearing–because it is a recent invention of Department of Corrections' officials proposed after the Court's earlier Findings. Upon review of the D.A.P. and supporting evidentiary materials filed by Defendants, the Court finds that the fire safety elements of the D.A.P., if implemented according to the drawings and schedules, would both meet the Life Safety Code and provide an acceptable level of fire safety even for disabled inmates with difficulties exiting. As such, the Court finds that the D.A.P. is an adequate Eighth Amendment remedy and is preferable to the Compartmentalization Plan given the faster construction schedule, the reduced costs, the lesser intrusion into Department affairs, and the public's interest in a safe and effective means of fire egress for prisoners in these facilities. The Court also finds that Defendants' remedy meets the requirements of the PLRA. The Compartmentalization Plan no longer meets the PLRA requirements because the D.A.P. is now available and is significantly less intrusive than the Compartmentalization Plan.

A few comments are warranted as to Plaintiffs' criticisms of the D.A.P. Plaintiffs suggest that Egeler inmates at upper levels may experience anxiety about the use of a raised walkway during fire exiting, which may in turn delay both their exit and the exit of other inmates exiting behind

them. Although this is a real concern, the Court does not view this concern as creating a significant likelihood of peril for several reasons. The Court believes that most inmates with height anxieties would, due to the construction of the Egeler blocks, already be stationed at lower levels. Further, any such inmates now residing at upper floors would have an option of exiting from end row staircases. Finally, the responsible prison officials plan to test their system during fire drills. If during drills certain inmates experience anxiety or other difficulty using raised walkways, they may be reassigned to lower cells to prevent difficulty in the event of actual fire.

Plaintiffs have also postulated that the raised walkways should be protected by cyclone fencing to prevent prisoner falls. The Court does not perceive this to be a wise suggestion for several reasons. The prisoners who use the upper Egeler floors are experienced with the use of raised walkways outside their cells and have not experienced any problems with falls, including during fires and fire drills. The introduction of cyclone fencing would also add a ready supply for prisoner shanks–something the security staff of the prison justifiedly seek to avoid.

In light of the above, the Court further finds that Defendants are entitled to relief under Federal Rule of Civil Procedure 60(b)(5) and/or 60(b)(6)–due to exceptional changes in circumstances which make the enforcement of the previously ordered relief otherwise inequitable–*i.e.,* the proposal of a new plan together with the public's interest in the enactment of the most expedient and least intrusive constitutional remedy. *Cf. United States v. Swift & Co.,* 286 U.S. 106, 119 (1932); *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 384 (1992). As such, the Court will make the required certification under *Hirsch* and certify to the Court of Appeals that it will upon remand approve Defendants' D.A.P.

Plaintiffs' request to strike Defendants' Affidavits will be denied because the admittedly old information has new found relevance in light of the newly-minted Detailed Alternative Plan and because the Court must, in any event, consider such information because it bears upon equitable factors relating to the public's interest and the wise expenditure of public resources.  In particular, in light of such information, the Court cannot justify the expenditure of a large amount of prison resources to introduce a new remote unlocking system to replace an older, functional and constitutionally adequate unlocking system, nor is interference with the Department's control of prisoner cell property otherwise justified on the present record.

An Order shall enter consistent with this Opinion.

DATED in Kalamazoo, MI:  
May 15, 2006

 /s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE