UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EVERETT HADIX, *et al.*,

        Plaintiffs,

Case No. 4:92-CV-110

v.

Hon. Richard Alan Enslen

PATRICIA L. CARUSO, *et al.*,

**OPINION**

        Defendants.
_____/

This matter is before the Court on Plaintiffs' Notice of Appeal of United States Magistrate Judge Ellen S. Carmody's Order of September 19, 2006, which denied Plaintiffs' motion to compel production of peer review medical documents requested in discovery. Oral argument is unnecessary in light of the briefing.

### STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(A), the review of a magistrate judge's pretrial orders is limited to whether the orders are "clearly erroneous or contrary to law." *See United States v. Raddatz,* 447 U.S. 667, 673 (1980); *Flournoy v. Marshall*, 842 F.2d 875, 876-77 (6th Cir. 1988). This standard is necessarily deferential; it does not permit reversal unless the reviewing court is left with the definite and firm conviction that an error has been made. *See United States v. Kellams,* 26 F.3d 646, 648 (6th Cir. 1994) (citing *Anderson v. Bessemer City,* 470 U.S. 564, 573-74 (1985)); *Chakales v. Comm'r of Internal Revenue,* 79 F.3d 726, 728 (8th Cir. 1996).

### LEGAL ANALYSIS

Upon review of the argument, the decision of the Magistrate Judge shall be affirmed. The Sixth Circuit Court of Appeals has had limited opportunity to consider and resolve this question.

In *United States v. Michigan*, 940 F.2d 143, 161-66 & n.12 (6th Cir. 1991), the Sixth Circuit criticized this Court's failure to recognize a peer review privilege, but reversed the decision permitting access to the documents not based upon the privilege *per se*, but because the order in question unduly modified the underlying Consent Decree (which provided that only a summary of the peer review documents would be released).  The Sixth Circuit did, however, in *dicta*, criticize an earlier ruling which failed to recognize the privilege.  *Id.* at 163 n.12.  Plaintiffs argue that a medical peer review privilege should not be recognized under Federal Rule of Evidence 501 because of the United States Supreme Court's decision in *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182 (1990), which refused to adopt an "academic peer review privilege," the Fourth Circuit's decision in *Virmani v. Novant Health Inc.*, 259 F.3d 284, 289 (4th Cir. 2001), which refused to adopt a "medical peer review privilege" in the context of a racial discrimination employment suit, and *Agster v. Maricopa County*, 422 F.3d 836, 839-40 (9th Cir. 2005), which refused to apply the privilege in the context of a prisoner's wrongful death suit arising under both federal and state law.

Many of the decisions which have followed the *University of Pennsylvania* decision have applied it overly broadly to contexts which were not intended by the Supreme Court and which belie the intent of Rule 501 (to allow a flexible approach to the federal common law of privilege which serves important national interests).  This treatment is reminiscent of some noteworthy words of wisdom by author Mark Twain:

> We should be careful to get out of an experience only the wisdom that is in it–and stop there; lest we be like the cat that sits down a hot stove-lid.  She will never sit down a hot stove-lid again–and that is well, but also she will never sit down a cold one anymore.[1]

---

[1]Samuel Clemens, *Following the Equator* ch. 11 (Am. Pub. Co. 1898).

The cold stove that precedent has ignored since the *University of Pennsylvania* decision is the widely recognized interest of the medical profession, acting to serve society, to eliminate incompetent physician practices by a peer review of physician performance. These interests were recognized by the United States District Court for the District of Columbia and affirmed on appeal in the case of *Bredice v. Doctors Hosp., Inc.*, 50 F.R.D. 249 (D.D.C. 1970), *aff'd* 479 F.2d 920 (D.C. Cir. 1973) and other cases until the *University of Pennsylvania* decision put some judges at fear of recognizing new privileges, particularly in view of Congress' failure to adopt a federal peer review privilege in statutory law. *But cf. Weekoty v. United States*, 30 F. Supp. 2d 1343 (D.N.M. 1998) (recognizing privilege); *Stringfellow v. Oakwood Hosp. & Med. Ctr.*, 2005 U.S. Dist. LEXIS 24416 (E.D. Mich. Oct. 21, 2005) (recognizing privilege) (Defs.' Resp., Ex. 1).

Medical peer review, unlike academic peer review, is variously protected by the laws of all 50 states, which shield peer review documents from civil discovery. *Virmani*, 259 F.3d 284, 290; *see also* Charles David Creech, *The Medical Review Committee Privilege: A Jurisdictional Survey*, 67 N.C. L. Rev. 179, 179-80 (Nov. 1988). The purpose of those laws is obvious on their face. If medical malpractice suitors are permitted access to institutionally self-critical analysis, then the self-critical analysis and attendant improvements of medical services will stop. *See HCA Health Servs. of Va., Inc. v. Levin*, 530 S.E.2d 417, 420 (Va. 2000). The *Virmani* decision, which did not recognize the privilege in the context of employment discrimination, nevertheless agreed that the pervasiveness of the recognition of a privilege by the States is a significant factor in determining the application of the potential privilege. *Virmani*, 259 F.3d at 289-90 (citing *Jaffee v. Redmond,* 518 U.S. 1, 12-13 (1996) (recognizing psychotherapist privilege)). *Virmani*, however, sidestepped the recognition of the privilege because the privilege was created for medical malpractice cases and there

was no clear consensus by state legislators that the privilege be applied to discrimination suits. *Virmani*, 259 F.3d at 291.

In the present case, the sidestepping analysis of the *Virmani* case is not persuasive nor applicable. The Ninth Circuit's analysis in *Agster* is applicable but not persuasive. Prisoner civil rights cases founded on Eighth Amendment claims that doctors failed to provide adequate medical care are the federal equivalent of state medical malpractice suits (with the caveat that liability in such suits depends on a showing of intentional or reckless disregard of the prisoner's rights). These suits are the very object of the state statutes which create the peer review privilege, especially as it relates to peer review of prison facilities. In Michigan, like other states, by statute the documents of a peer review committee are protected from civil discovery. *See Feyz v. Mercy Mem'l Hosp.*, 719 N.W.2d 1, 11-12 & nn.52-55 (Mich. 2006); Mich. Comp. Laws §§ 331.531-533; Mich. Comp. Laws § 333.20175(8). As noted by the Michigan Supreme Court, the privilege is applied broadly and prevents even the Attorney General from obtaining documents in connection with criminal proceedings. *Feyz*, 719 N.W.2d at 12 n.52.

Furthermore, unlike the Title VII, antitrust and criminal contexts in which discovery has been allowed by some courts, the Court's experience in this case has not confirmed that discovery of these materials is necessary to protect prisoners' Eighth Amendment interests. Rather, those interests may be protected by an individualized review of the prisoners' own medical records, a task which is made easier in this case by the appointment of the Independent Medical Monitor. The Monitor regularly reviews such files and also investigates prisoner complaints regarding insufficient medical care. As such, the Court finds that it is fit and proper in this context to recognize and apply a peer review privilege which prevents discovery of peer review materials. A contrary ruling would

eliminate candor in the peer review process and translate it into a kind of perfunctory administrative review which would not protect prisoner life or health.

Alternatively, even were the Court to disagree with the Magistrate Judge's decision recognizing the peer review privilege, the Court would nevertheless shield such materials from discovery on an alternative ground. The alternative ground is that the peer review process, including its confidentiality, must be preserved in order to facilitate the proper delivery of medical care at the *Hadix* facilities. Peer review of medical performance is important in any institution and has added importance as to public health care of a vulnerable (prison) population. Peer review is also essential to the prison context because non-medical administrators lack the expertise to review the competence of medical doctors and staff. *See Casiano v. Gonzales*, 2006 WL 229956, 2 (N.D. Fla. 2006) (discussing peer review system of a U.S. Bureau of Prisons' facility in Florida). This Court will not upset that safeguard for discovery which can be obtained by other means.[2]

## **CONCLUSION**

For the reasons given, an Order shall enter denying Plaintiffs' Appeal and affirming the decision of the Magistrate Judge.

DATED in Kalamazoo, MI:        /s/ Richard Alan Enslen
    October 6, 2006            RICHARD ALAN ENSLEN
                    SENIOR UNITED STATES DISTRICT JUDGE

---

[2]Plaintiffs' brief also includes a "throw away" argument that Defendants have waived the privilege. This argument has not been articulated clearly enough or supported sufficiently enough to warrant a finding that the privilege has been waived as to the requested documents.