UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EVERETT HADIX, *et al.*,

        Plaintiffs,

v.

PATRICIA CARUSO, *et al.*,

        Defendants.

_____/

Case No. 4:92-CV-110

Hon. Richard Alan Enslen

**OPINION**

    This matter is before the Court to address in expedited fashion the subject of whether Defendants' heat-related injury plan should receive Court approval. The parties have provided expedited briefing on the subject. The expedition of the process has been necessary because the plan is to be implemented by July 15, 2007 and any delay in its implementation is likely to prevent any effective remedy during the warmest of the 2007 heat alert days. While the Court would like to entertain oral argument on this matter, the Court's present scheduling and the pressing nature of the remedy do not permit such.

    In order to understand the scope and nature of the remedy needed, one must revisit the Court's Findings of Fact and Conclusions of Law of April 3, 2007 (hereafter "Findings"). This Court found based on one-sided medical testimony presented during the January 2007 hearing that the present summer conditions at the *Hadix* facilities pose an unacceptable risk of heat-related injury to those *Hadix* prisoners classified at high risk for heat-related injury. (*See* Findings ¶¶ 8-9, 11-12, 16, 18-20, 31, 34, 42-43.) The Eighth Amendment to the United States Constitution requires that prisoners be housed in humane conditions of confinement which do not expose them to life-threatening conditions. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Helling*

*v. McKinney*, 509 U.S. 25, 33-34 (1993).  While the Eighth Amendment only prohibits deliberate indifference to known unconstitutional conditions, once prison officials are put on notice of those conditions in the context of an ongoing litigation, their failure to correct the conditions will warrant injunctive relief to prevent further exposure to life-threatening conditions.  *See Hadix v. Johnson*, 367 F.3d 513, 526 (6th Cir. 2004).

In light of such legal requirements, this Court found that a Permanent Injunction should enter requiring Defendants to house prisoners at high risk for heat-related injury within facilities with a reliable heat-index below 90. Defendants have complied with the Permanent Injunction by forwarding a plan for Court approval which provides for: (1) the use of temporary air conditioning units (trailer-based units) for Blocks 4, 5, and 6 on heat alert days; and (2) the use of a "Cool Dome" air-conditioned facility on the grounds of the Egeler Reception and Guidance Center ("RGC") to house RGC and 7 Block at-risk prisoners during heat alert days.  Defendants believe that this plan, though not without some discomfort and inconvenience for some of the affected prisoners, would provide a sufficient remedy to comply with the Court's requirements and would prevent avoidable heat-related injury. (*See* Defs.' Resp. 2-5; 2nd Supplement 1-3.)   Defendants also foresee that the use of the Cool Dome could serve other department needs during the non-summer seasons by providing additional space for needed storage and/or staff usage. (Defs.' Resp. at 5-7.)

Plaintiffs have objected to the plan.  Plaintiffs express concern that the operation of the Cool Dome would expose prisoners to undue risk of physical violence from other prisoners, would fail to provide adequate sanitation (because prisoners would have to leave the Cool Dome to use restroom facilities), would disrupt the delivery of medications and medical care to affected prisoners, would jeopardize prisoner access to their personal property including court papers, and would provide

inadequate facilities which do not accommodate the needs of handicapped prisoners. Plaintiffs also express concern that the Cool Dome remedy, as implemented, may be waived by prisoners, such that it may not be utilized by a sufficient number of them to render it effective. The Court has reviewed these arguments with a shared concern for the plight of the affected prisoners. Plaintiffs have also filed evidence (the Affidavit of Clarence Moore) which supports the notion that prison officials may have retaliated against prisoners in Blocks 4-7 for exercising their rights under the Eighth and First Amendments to the Constitution.[1]

Notwithstanding, the terms of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1), require that prospective relief be limited and that intrusions upon public institutions not adversely impact their operations:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

---

[1] Defendants, post-briefing, filed a "Status Report," which attempted to contradict Mr. Moore's characterization of their conduct as retaliatory. While Defendants do not deny that some regular services are being denied *Hadix* prisoners, they represent that the denials are not retaliatory in nature (*i.e.*, postal services were denied due to temporary malfunction of a postage machine and other services were temporarily suspended due to the projected closing date of prison facilities). Defendants do not dispute, however, the concept, firmly established in Sixth Circuit law, that they are not free to retaliate for the exercise of First Amendment rights. *See Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Plaintiffs have also moved to strike the Status Report since it is made without evidentiary support. While Plaintiffs' Motion to Strike will be denied given the limited authority of the Court to strike pleadings under Rule 12(f), *see Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981), it is significant that Defendants' representations are not supported by affidavit, declaration or deposition.

18 U.S.C. § 3626(a)(1). Furthermore, the traditional stance in equity of the courts is to provide public officials with sufficient discretion in implementing effective remedies and to pay special attention to the public consequences of injunction relief. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12 (1982); *Knop v. Johnson,* 977 F.2d 996, 1008 (6th Cir. 1992).

Given the lateness of the season and the flexibility which must be afforded to public administers in administering constitutional remedies, the Court's only choice at this point of time is to approve Defendants' chosen heat-related remedies for this season with conditions to make the implementation of the remedy consistent with constitutional standards. To do otherwise would be to loose the 2007 summer season without an effective remedy.

As such, Defendants' remedy will be approved subject to the following conditions:

(1) Defendants shall take steps to ensure that all Cool Dome prisoners with disabilities shall be provided with accommodations for their disabilities consistent with Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* Defendants' plans to do so shall be shared with Plaintiffs and the Court on a timely basis.

(2) Defendants shall provide at no cost to the Cool Dome prisoners locks to secure property at RGC (and also Block 7, if necessary) and messengers to retrieve property when there is an urgent reason for doing so (*i.e.,* access to medication, access to court papers in order to meet a filing date, *etc.*)

(3) Defendants shall ensure that American Public Health Association standards for sanitation (toilets and washbasins) are met as to Cool Dome prisoners, namely at least one toilet and one sink per every eight prisoners within the Cool Dome shall be provided. At least, one third of those toilet/sink combinations shall be provided inside the Cool Dome and the remainder shall be provided immediately

outside the facility. These facilities shall be maintained in a sanitary condition during occupancy.[2] The Monitor shall also verify the lists for those to be housed in the Cool Dome and may add additional prisoners at risk of heat-related injury to the list based upon his review of patient records and independent clinical judgment.

(4) Defendants shall plan and take active steps to ensure that Cool Dome housing does not interfere with prisoner access to medical care and prescriptions and shall share such plans on a timely basis with both Plaintiffs and this Court.

(5) Defendants shall plan and take active steps to ensure that Cool Dome housing does not pose any unnecessary security risk to prisoners and shall share such plans on a timely basis with both Plaintiffs and this Court.

(6) Defendants shall cease and desist from punitive measures (including the non-provision of regular services afforded other inmates) which retaliate against class members for exercising their constitutional rights.

(7) Defendants shall file with the Court not later than June 15, 2007 an implementation schedule for the heat-related remedies described herein together with affidavits of responsible officials attesting to the feasability of the implementation by July 15, 2007, the effectiveness of Defendants' plans to meet the Court's required conditions, and the steps which have been taken to eliminate any retaliation against prisoners.

---

[2] *See* American Public Health Association Task Force on Correctional Health, *Standards for Health Services in Correctional Institutions* 151-52 (3d Ed. 2003) (setting forth the one to eight ratio as the proper standard for sinks/toilets in a dormitory setting). The above health standards reflect a recognition of the need for basic sanitation within living quarters. This is also very necessary for the *Hadix* population given that many of the inmates have health conditions which contribute to frequent urination (enlarged prostate, diabetes, *etc.*).

(8) Defendants shall survey the percentage of prisoners who do not utilize the Cool Dome remedy and shall report to the Court by September 30, 2007 both the percentage of prisoners not utilizing the remedy and the reasons given for not utilizing the remedy by the prisoners who waive it. Prior to accepting a waiver, Defendants shall provide the prospective Cool Dome prisoner with a copy of this Opinion and the Order implementing it, and shall advise each prisoner that the Court has ordered the remedy to be implemented consistent with constitutional standards. Plaintiffs may, but are not required to, file a motion not later than October 15, 2007 seeking a different remedy for the 2008 summer season.

Accordingly, an Order shall enter approving Defendants' heat-related injury plan subject to the conditions set forth herein.

DATED in Kalamazoo, MI:  
June 5, 2007

/s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE