UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EVERETT HADIX, *et al.*,

    Plaintiffs,

Case No. 4:92-CV-110

v.

Hon. Richard Alan Enslen

PATRICIA CARUSO, *et al.*,

**OPINION**

    Defendants.
_____/

    Pending before this Court is Plaintiffs' expedited Motion for Leave to Conduct Discovery Regarding Possible Contempt of Court, Retaliation against Class Members, and Alleged Bad Faith Conduct by Defendants. Defendants have timely responded in opposition to the Motion. Oral argument is not possible given the emergency nature of the relief requested and the Court's schedule.

    This case has been pending on my docket as well as other prisoner litigation for many years. Lawyers representing Defendants have often changed, and some have been more helpful to the Court than others. For quite some time, A. Peter Govorchin has been the only defense counsel appearing in the Court and has appeared "overworked." In writing this Opinion, I am impressed by the civility and competence of all counsel and their efforts to expedite the issues currently pending.

    Defense counsel deserves particular credit for his advocacy, his professionalism and his legal ability as demonstrated in his recent court filings. His Response indicates that Defendants' decision to close the Southern Michigan Correctional Facility ("JMF") was based upon a cost analysis by Michigan Department of Corrections' officials and was not based upon a primary purpose to avoid federal jurisdiction over the *Hadix* facilities. (*See* Resp. 2-6.) The Response advances this point persuasively, also arguing that the parties should be directing their efforts toward improvement of

conditions rather than discovery, wherever possible. The Court agrees with Defendants that "emergency discovery" should not be conducted for the mere purpose of determining a contempt motion.

Notwithstanding, the Court believes that the discovery sought in this matter should be provided for a separate, but related purpose–the determination of whether to approve future transfer plans. The express logic of Defendants, that JMF closure is related to per prisoner cost, is persuasive. However, this argument does not disclose important details pertaining to future plan approval. For example, it fails to compare costs for all level IV MDOC facilities. It also fails to disclose the relative <u>medical costs</u> per prisoner at JMF versus other level IV MDOC facilities. Should the evidence indicate that Defendants intend to achieve significant medical cost savings for a class of inmates whose rights to medical treatment have been previously violated, then it is not likely that such a plan would be approved, with one caveat. That is, if Defendants can present persuasive evidence that the delivery of care at the new facilities is more effective in terms of both cost and performance. This is a concern because the Court realizes from past filings that the patient to provider ratio at the non-*Hadix* facilities is much higher than the ratio at the *Hadix* facilities. This scenario creates a concern that care will not be provided as needed upon transfer absent corrective action and protective conditions. One apparent example is that the movement of *Hadix* prisoners away from the Duane Waters Health Care Center may increase the transportation costs for prisoners needing hospital services and may also make hospital and specialty services less accessible to some prisoners.

The Court has read with interest the recent filings of the parties and the Independent Medical Monitor. The filings appreciate something which has sometimes been ignored in discussion - that medical services for serious needs is required by the Eighth Amendment and the United States

Supreme Court's precedents. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Since last November, the Court has received over 200 prisoner letters from prisoners not incarcerated at *Hadix* facilities but alleging that the authors have routinely not been treated for serious and often life-threatening medical conditions at these facilities.[1] The Court continues to receive large numbers of letters by non-*Hadix* prisoners who are routinely informed by me that they have no standing in *Hadix* and advising if they want judicial relief, they will need to file suit, either in the Eastern or Western District of Michigan. On some occasions, I forward such letters to counsel for Plaintiffs and Defendants as well as the Medical Monitor. In other cases, I do not.

This Court has received some 21 letters from prisoners at the G. Robert Cotton Facility. The Cotton Facility is a multi-level facility, including level IV housing, which was not mentioned in Defendants' cost comparisons. Medical complaints from Cotton include, but are not limited to: alleged untreated multiple sclerosis, alleged untreated or incorrectly treated diabetes, alleged untreated infections, alleged untreated heart disease and other heart-related conditions, alleged lack of follow-up care for hepatitis C, alleged untreated pain and denial of specialist care, and alleged failure to provide inmates with prescribed medications.

I have attached to this Opinion a sealed Appendix which contains the above Cotton Facility correspondence. (Attached Sealed App. 1.) The purpose of the Appendix is to provide a record of the correspondence while keeping the correspondence confidential. In addition to those letters, I have received photographs of inmates, depicting untreated medical conditions, such as hernias. Some of

---

[1] The Court has also received a large number of letters from *Hadix* prisoners and the Office of the Independent Medical Monitor has received more than 250 complaints concerning prisoner medical treatment.

these letters from non-*Hadix* prisoners, if accurate, may demonstrate that the MDOC may be generating cost savings by not treating serious medical conditions. This raises the issue of whether Defendants' pending transfer plan is *bona fide* and should be approved as consistent with equity and constitutional standards. While the Court cannot assess the truth or falsity of many of the letters it receives, the frequency of such letters and the serious nature of the matters set forth in the Appendix warrant inquiry in the form of the discovery order of this date, particularly in light of the expected filing this month of Defendants' renewed transfer plan.

In accordance with this Opinion, Plaintiffs' Motion for Leave to Conduct Discovery Regarding Possible Contempt of Court, Retaliation against Class Members, and Alleged Bad Faith Conduct by Defendants shall be granted in part and denied in part. Discovery shall be permitted limited to the issues of whether the renewed JMF transfer plan proposed by Defendants is *bona fide* and whether the JMF transfer is calculated to result in adequate medical care for *Hadix* prisoners. The schedule for such discovery shall be as follows: all written discovery requests, including deposition notices, shall be submitted by Plaintiffs within three days; all depositions shall be scheduled within 15 days; and Defendants' responses to written discovery requests shall be submitted within 15 days of service. In making this Order, the Court is cognizant of the attendant demands upon defense counsel of more discovery, but urges defense counsel to obtain greater assistance from others within the Office of the Michigan Attorney General, so as to accomplish defense representation expeditiously.

DATED in Kalamazoo, MI:
    June 11, 2007

/s/ Richard Alan Enslen
RICHARD ALAN ENSLEN
SENIOR UNITED STATES DISTRICT JUDGE